IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN ILLINOIS

| | |
|---|---|
| MOTOROLA SOLUTIONS, INC. ) <br> ) <br> ) <br>  Plaintiff, ) <br> ) <br>  vs. ) <br> ) <br> NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURGH, PA, ) <br> ) <br> ) <br>  Defendant. ) <br> ) <br> ) | Case No. <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

1. Plaintiff Motorola Solutions, Inc. ("Motorola"), for its Complaint against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), states as follows:

## NATURE OF THE ACTION

2. In this action, Motorola seeks damages for National Union's breaches of its duties under excess liability insurance policies National Union issued to Motorola as part of Motorola's 1981-1983 insurance program. National Union's excess policies provide defense and indemnity coverage to Motorola for covered liability claims when "Ultimate Net Loss," as that term is defined in the National Union policies, has been incurred in excess of $26 million for covered claims in the 1981-1983 policy period.

3. However, when in excess of $26 million of Ultimate Net Loss in the 1981-1983 policy period for the defense and settlement of covered claims was incurred, National Union

refused to honor its coverage obligations, leaving Motorola on its own to pay certain defense costs and settlements, and hindering efforts to settle pending bodily injury claims.

4. Motorola seeks damages for National Union's breaches of its policies, which have denied Motorola the benefit of the coverage it purchased. Motorola also seeks a declaration that National Union's excess policies have been reached based on the Ultimate Net Loss incurred to date, as well as a declaration that National Union is liable for defense costs and settlement amounts incurred in excess of $26 million. Finally, because National Union's coverage positions lack any reasonable basis in the policy language or Illinois law, and, accordingly, are vexatious and unreasonable, Motorola seeks damages for National Union's ongoing bad faith conduct, as permitted under Illinois law.

## THE PARTIES

5. Motorola is a corporation organized and existing under the laws of Delaware, with its principal place of business in Chicago, Illinois.

6. National Union is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in New York City, New York.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 because Motorola is not a citizen of the same state as National Union, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8. Personal jurisdiction in Illinois is proper because, at all relevant times, National Union has been licensed or authorized to sell insurance in and has transacted business in Illinois, including selling Motorola the policies at issue in this action and failing to honor its obligations to Motorola in Illinois. National Union also performed acts within Illinois for the purpose of

realizing pecuniary benefit, namely contracting to insure persons, property, or risks located in Illinois, including collecting premiums for the policies at issue in this action.

9. Venue is proper in the District of the Northern District of Illinois under 28 U.S.C. § 1391 because a substantial part of the events and transactions giving rise to the controversy occurred in Illinois. Among other things, National Union delivered the insurance policies at issue to Motorola's offices, which were and are located in this District; Motorola approved and initiated payment of premiums for the policies from this District; and bodily injury claims for which Motorola seeks coverage are pending in this District.

## MOTOROLA'S 1981-1983 INSURANCE PROGRAM

10. Motorola's 1981-1983 general liability insurance program incepted on July 1, 1981.

11. Zurich Insurance Company ("Zurich") issued the primary general liability insurance policy for the 1981-1983 policy period (policy number 89-54-784) (the "Zurich Primary Policy"). The Zurich Primary Policy has a two-year policy period from July 1, 1981 to July 1, 1983. The Zurich Primary Policy provides limits of $1 million per occurrence for bodily injury claims. A copy of the Zurich Primary Policy is attached as Exhibit 1.

12. Harbor Insurance Company ("Harbor"), a CNA company, issued the first excess policy (policy number HI 149659), for the initial period July 1, 1981 to July 1, 1982, which provides limits of $25 million per occurrence excess of the primary policy (the "Harbor Policy"). A copy of the Harbor Policy is attached as Exhibit 2. As discussed below, the policy period of the Harbor policy was later extended to end on July l, 1983.

13. National Union issued the second excess policy (policy number 1186465) (the "1981-1982 National Union Excess Policy") for the period July 1, 1981 to July 1, 1982, which provides limits of $25 million per occurrence excess of the $26 million in underlying limits (*i.e.,*

the $25 million Harbor policy and the $1 million Zurich primary policy). A copy of the 1981-1982 National Union Excess Policy is attached as Exhibit 3.

14. In 1982, Motorola sought to place and purchase insurance to cover the period July 1, 1982 to July 1, 1983.

15. Harbor amended the Harbor Policy to extend its policy period for an additional year, with the policy period now ending on July 1, 1983 (the "Extension Endorsement"). Exhibit 2 at 017. In other words, by virtue of that extension of the policy period, Harbor's one-year excess policy became a two-year excess policy (like the Zurich Primary Policy below it) that provided $25 million in excess coverage per occurrence over a two-year period.

16. National Union took a different approach. Rather than extending its policy to cover the 1982-1983 policy year, National Union issued a new one-year policy (policy number 1186389) (the "1982-1983 National Union Excess Policy"). This policy covered the period July 1, 1982 to July 1, 1983, and provided a separate $25 million per-occurrence limit for that policy year. A copy of the 1982-1983 National Union Excess Policy is attached as Exhibit 4.

17. Thus, the following graphic depicts Motorola's 1981-1983 insurance program up to the National Union policies:



## THE TERMS OF THE NATIONAL UNION POLICIES

18. The 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy are very short and simple policies—neither is more than a few pages long.

19. The 1981-1982 National Union Excess Policy states that it provides a "Limit of Liability" of "$25,000,000 Excess $25,000,000 Excess of Primary." Exhibit 3 at 001. It then incorporates the terms of the underlying Harbor Policy through an endorsement: "The Company agrees with the Insured named below . . . that the insurance afforded by this policy shall follow all the terms and conditions of Policy Number HI 149659 issued by Harbor Insurance Company including all renewals and rewrites thereof." *Id.* at 002. This type of policy is commonly referred to as a "following-form" policy, in that it follows the form of—that is, adopts the terms and conditions of—the identified underlying policy.

20. Similarly, the 1982-1983 National Union Excess Policy states that it provides a "Limit of Liability" of "$25,000,000 each occurrence and aggregate Excess of $25,000,000 each occurrence and aggregate Excess of primaries." Exhibit 4 at 001.

21. The 1982-1983 National Union Excess Policy then incorporates the terms of the Harbor Policy: "The Company agrees with the Insured named below . . . that the insurance afforded by this policy shall follow all the terms and conditions of Policy Number to be advised issued by Harbor Insurance Company including all renewals and rewrites thereof." *Id.*

22. Thus, the coverage grant and other material terms applicable to the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy are found in the underlying Harbor Policy.

23. The Harbor Policy provides that the insurer "agrees . . . to indemnify [Motorola] for all sums which [Motorola] shall be obligated to pay by reason of the liability . . . imposed upon [Motorola] by law . . . for damages on account of [] personal injuries . . . caused by or

arising out of each occurrence happening anywhere in the world during the policy period." Exhibit 2 at 020.

24. The Harbor Policy defines "Personal Injuries" to include "bodily injury, sickness, [and] disease." *Id.*

25. The Harbor Policy defines "Occurrence" as "an accident, including continuous and repeated exposure to conditions, which results in personal injury . . . neither expected nor intended from the standpoint of the Insured. With respect to personal injury . . . , all ultimate net loss arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence." *Id.*

26. The Harbor Policy provides that it "shall only be liable for the Ultimate Net Loss, the excess of . . . the limits of the underlying insurances as set out in the attached scheduled in respect of each occurrence covered by said underlying insurances." *Id.*

27. The Harbor Policy defines "Ultimate Net Loss" as the

> "total sum which [Motorola], or [its] Underlying Insurers as scheduled, or both, become obligated to pay by reason of personal injuries . . . either through adjudication or compromise, and shall also include . . . all sums paid as salaries, wages, compensation, fees, charges and law costs, . . . expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder."

*Id.* at 020-021.

28. Each of the terms set forth in Paragraphs 23-27 above is incorporated into both the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy. *See* Exhibit 3 at 002 and Exhibit 4 at 001 (incorporating the terms of the Harbor Policy).

**THE CLEAN ROOM CLAIMS & EXHAUSTION OF THE UNDERLYING POLICIES**

29. Beginning in 2008, Motorola was sued in a series of personal injury actions in the Circuit Court of Cook County, Illinois, alleging that certain children of former Motorola employees and contractors who used to work in semiconductor manufacturing facilities suffered birth defects as a result of their parent(s) exposure to chemicals in clean rooms (the Clean Room Actions).

30. Claims of certain plaintiffs have been settled. Trials of non-settled plaintiffs are set to commence shortly. Mediations of certain plaintiffs have occurred, and mediations of other plaintiffs are scheduled over the next few months (Judge Solganick, who is presiding over the Clean Room Actions, ordered the parties to mediate certain actions by the end of 2018).

31. As is relevant here, the specific plaintiffs that either settled or continue in active litigation who were born during the period of Motorola's 1981-1983 insurance program are: Angela Numkena (born January 13, 1982), Ilene Bullock (born April 20, 1983), Jason Coar (born June 17, 1982), and Krystal Perdue (born December 22, 1981).

32. Each alleges personal injury during the 1981-1983 in that the plaintiffs allege that they were exposed to chemicals *in utero* while their mothers worked at Motorola facilities and were born during the 1981-1983 policy period with birth defects.

33. National Union has not contested that the claims of Angela Numkena, Ilene Bullock, Jason Coar, and Krystal Perdue are covered occurrences under the 1981-1982 National Union Excess Policy or the 1982-1983 National Union Excess Policy. National Union only disputes the amount of Ultimate Net Loss that must be incurred to reach its policies.

34. Angela Numkena, Ilene Bullock, and Jason Coar all allege that their mothers worked at the same Motorola facility—Motorola's Mesa facility (their claims are the "Mesa Claims"). As a result, they were exposed to "substantially the same conditions" and, therefore,

are treated as involving one occurrence under the terms of the Harbor Policy, which are incorporated into the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy. Indeed, Harbor has taken the position that these three claims all involve one occurrence, and, accordingly, trigger only one per-occurrence limit.

35. Motorola and Harbor settled the claims of Angela Numkena and Ilene Bullock for a total amount in excess of $28 million.

36. Defense costs in excess of $4.5 million have been incurred in defending the Mesa Claims.

37. Thus, well more than $26 million in Ultimate Net Loss has been paid or incurred for the Mesa Claims, exhausting the per-occurrence limits underlying the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy.

38. Accordingly, coverage under the National Union policy has been triggered, since Ultimate Net Loss in excess of the $26 million per occurrence has been incurred. National Union therefore is responsible, under its policies, for defense costs, settlements, or judgments of the remaining Mesa Claims, including, in particular, the Coar claim.

## NATIONAL UNION'S REFUSAL TO PROVIDE COVERAGE

39. National Union has expressly acknowledged that more than $26 million has been paid or incurred in Ultimate Net Loss for the Mesa Claims.

40. Despite this acknowledgement, National Union has refused to provide coverage to Motorola under the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy for amounts in excess of $26 million per occurrence.

41. Instead, National Union has asserted incorrect, false, and frivolous coverage positions to deny coverage. For example, National Union has taken the position that the

underlying Harbor Policy provides $25 million per occurrence for each policy year (rather than $25 million per occurrence over the two-year policy period).

42. There is no provision in the single, two-year Harbor Policy that states that the "per occurrence" limits of the Harbor Policy are applied on an annual basis.

43. To the contrary, the Extension Endorsement extending the policy period of the Harbor Policy for an additional year states, "In consideration of the additional premium charged hereon, it is understood and agreed that the expiration date of this policy as stated in the declarations is hereby amended to be as follows: July 1, 1983, 12:01 a.m. standard time at the address of the Insured." Exhibit 2 at 017.

44. Harbor has explained this provision of its policy to National Union, but National Union has refused to accept the interpretation of the insurer that drafted the policy at issue.

45. The Extension Endorsement does not state that per-occurrence limits apply on an annual basis; rather it merely extended the policy period for an additional year, resulting in the per-occurrence limit extending for the full two-year policy period.

46. Furthermore, the Extension Endorsement does not use the word "occurrence"; nor does it amend "Item 2. Limit of Liability" of the Declarations of the Harbor Policy.

47. National Union has also taken the incorrect and unreasonable position that Motorola itself was obligated to provide $25 million in underlying coverage per occurrence per year and, thus, that Motorola is required to fill a supposed $25 million "gap" to reach the National Union policies. In other words, National Union asserts—with no justification or support in its policy language or otherwise—that Motorola was required to purchase a separate $25 million policy underlying National Union's policy for the 1982-1983 policy year (a period for which Motorola already had coverage under the Harbor Policy) and, if it failed to do so,

Motorola is required to pay $25 million in that year before it can reach the 1992-1983 National Union Excess Policy.

48. National Union's coverage-avoiding interpretations of the policy language are contrary to the policy language and lack any good-faith basis.

49. When National Union issued the 1982-1983 National Union Excess Policy, it agreed to provide coverage excess of the Harbor Policy.

50. When National Union issued 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy, it also agreed to provide coverage excess of Zurich Primary Policy.

51. National Union issued the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy knowing that the Zurich Primary Policy was a two-year policy.

52. There is no requirement in either the 1981-1982 National Union Excess Policy or the 1982-1983 National Union Excess Policy that the underlying policies must provide annual per-occurrence limits. To the contrary, the National Union policies merely state that the underlying coverage must be $25 million excess of $25 million, excess of primary.

53. Through the Zurich and Harbor policies, Motorola purchased $25 million "excess of primary."

54. National Union did not raise the issue of a requirement of annual per-occurrence limits with Motorola until more than 30 years after it issued the 1982-1983 National Union Excess Policy, and it has provided no information from its files demonstrating the existence of any such requirement.

55. Moreover, in the more than 30 years since it issued the 1982-1983 National Union Excess Policy, National Union has not asserted that it made a mistake or sought to reform the 1982-1983 National Union Excess Policy to incorporate this unstated requirement of annual per-occurrence limits. And its delay in seeking reformation precludes any such claim now.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AGAINST NATIONAL UNION

56. Motorola repeats and re-alleges the allegations of paragraphs 1 through 55 hereof as if they were fully set forth herein.

57. More than $26 million in Ultimate Net Loss has been paid or incurred for the Mesa Claims.

58. The Mesa Claims constitute one occurrence under the definition of the Harbor Policy. The Harbor Policy is in excess of the Zurich Primary Policy for the 1981-1983 policy period, and the Harbor Policy underlies (and provides terms for) the National Union policies at issue in this suit.

59. Accordingly, Ultimate Net Loss in excess of $26 million per occurrence has been incurred for the Mesa Claims.

60. National Union has refused to pay any amount of Ultimate Net Loss in excess of $26 million for the Mesa Claims.

61. Motorola has satisfied all conditions to coverage under the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy.

62. By reason of the foregoing, National Union is in breach of its contractual obligations under the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy, and Motorola has incurred damages as a direct result of that breach.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT AGAINST NATIONAL UNION

63. Motorola repeats and re-alleges the allegations of paragraphs 1 through 62 hereof as if they were fully set forth herein.

64. Motorola and National Union have a dispute over the amount of Ultimate Net Loss that must be incurred before reaching the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy.

65. Specifically, Motorola's position is that the Ultimate Net Loss is measured based on the two-year policy periods of the underlying Zurich Primary Policy and the Harbor Policy, and that it therefore must incur $26 million in Ultimate Net Loss during the two-year policy period of those policies to reach the National Union policies.

66. National Union's position, in contrast, is that at least $26 million in Ultimate Net Loss must be paid or incurred for each annual period of the underlying policies before its policies can be reached, and that an amount sufficient to reach the National Union policies has not been paid or incurred.

67. National Union has refused to acknowledge its coverage obligations to Motorola for Ultimate Net Loss for the Mesa Claims, even though more than $26 million has been paid or incurred for those claims.

68. Section 1 of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

69. Because National Union has refused to acknowledge coverage for the Mesa Claims, an actual controversy exists by and among Motorola and National Union regarding National Union's coverage obligations in connection with the Mesa Claims.

70. Motorola therefore seeks a declaration that a sufficient amount of Ultimate Net Loss has been paid or incurred to reach the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy for the Mesa Claims and that National Union must pay Ultimate Net Loss incurred by Motorola in excess of $26 million.

**THIRD CAUSE OF ACTION**
**BAD FAITH AGAINST NATIONAL UNION**

71. Motorola repeats and re-alleges the allegations of paragraphs 1 through 70 hereof as if they were fully set forth herein.

72. National Union is willfully misinterpreting the terms of the Harbor Policy to which National Union provides excess coverage by asserting that the Harbor Policy provides a $25 million annual per-occurrence limit. The Harbor Policy contains no provision of any sort stating that its per-occurrence limit applies on an annual basis.

73. National Union is willfully misinterpreting the terms of the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy by asserting that those policies require that the underlying insurance policies provide a $25 million annual per-occurrence limit, as well as asserting that Motorola must fill some alleged "gap" in coverage if the underlying policies do not provide $25 million per occurrence per year. The 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy expressly follow form to the Harbor Policy and therefore contain no such requirement. National Union's assertion that the policies contain such language lacks any reasonable basis in fact or law, and is asserted solely for the purpose of avoiding coverage and denying Motorola the coverage it purchased.

74. National Union has advanced coverage positions unsupported by the language of the relevant policies or applicable law, forcing Motorola to file litigation to obtain its coverage under the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy.

75. Under Illinois law, National Union conduct is "vexatious and unreasonable" and lacks any reasonable basis, and accordingly constitutes bad faith. *See* 215 ILCS 5/155.

## JURY TRIAL DEMAND

76. Motorola, pursuant to Rule 38 of the Federal Rules of Civil Procedure, demands trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Motorola respectfully prays for the following:

A. Judgment in favor of Motorola and against National Union on this Complaint, in an amount to exceed $75,000;

B. A declaration that a sufficient amount of Ultimate Net Loss has been paid or incurred to reach the 1981-1982 National Union Excess Policy and the 1982-1983 National Union Excess Policy for the Mesa Claims;

C. A declaration that National Union is liable for any Ultimate Net Loss in excess of $26 million incurred by Motorola.

D. All applicable damages available under 215 ILCS 5/155 for National Union's bad faith, including a statutory penalty, attorneys' fees, costs, and pre-judgement interest; and

E. An Order awarding Motorola such other and further relief as the Court deems just and proper, including, but not limited to, pre-judgment interest at the applicable rate for amounts due and owing, and the costs and expenses associated with bringing this claim.

        Motorola Solutions, Inc.


        */s/ James A. White*

Dated: October 18, 2018    James A. White
        JONES DAY
        77 West Wacker Drive
        Chicago, IL 60601-1692
        Phone: 312.782.3939
        Email: jawhite@jonesday.com

        Peter D. Laun (*pro hac vice to be filed*)
        JONES DAY
        2727 N. Harwood Street – Suite 600
        Dallas, TX 75201
        Phone: 214.969.4530
        Email: pdlaun@jonesday.com

        Matthew R. Divelbiss (*pro hac vice to be filed*)
        JONES DAY
        500 Grant Street – Suite 4500
        Pittsburgh, PA  15219
        Phone:  412.394.7297
        Email:  mrdivelbiss@jonesday.com